IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BETTYE PRITCHETT,                        :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :
                                         :        CIVIL ACTION 12-0768-M
CAROLYN W. COLVIN,                       :
Commission of Social Security,           :
                                         :
        Defendant.                       :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Docs. 20-21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The test for substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty years old, had completed a high school education (Tr. 38), and had previous work experience as a press operator and sewing machine operator (Tr. 38, 40). In claiming benefits, Plaintiff alleges disability due to hypertension, spondylosis, low back pain, vertigo, carpal tunnel syndrome, depression, and frequent urination (Doc. 13).

The Plaintiff filed applications for disability insurance and SSI on March 16, 2010 (Tr. 90-97; *see also* Tr. 26). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Pritchett was capable of performing her past relevant work (Tr. 26-31). Plaintiff requested review of the hearing decision (Tr. 11-15) by the Appeals Council, but it was denied (Tr. 1-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Pritchett

alleges that: (1) The ALJ did not properly consider all of her impairments; (2) the ALJ did not consider the combination of her impairments; (3) the ALJ's determination of her residual functional capacity (hereinafter *RFC*) is incorrect; (4) the ALJ did not pose a complete hypothetical question to the vocational expert (hereinafter *VE*); and (5) the Appeals Council did not properly consider newly-submitted evidence (Doc. 14).[1] Defendant has responded to—and denies—these claims (Doc. 15). The evidence of record follows.

On December 8, 2006, Plaintiff was examined at Yellow Bluff Health Center, complaining of a knot under her left arm; she was in no apparent distress (Tr. 193; *see generally* Tr. 173-218). Pritchett was told to apply a hot compress to the area; Keflex[2] and Diovan[3] were prescribed. On March 15 and September 4, 2007, Plaintiff was seen—and prescribed medications—for hypertension (Tr. 192). On November 28, Pritchett denied having any problems; she had prescriptions refilled on March 26, 2008 (Tr. 191). Plaintiff's next visit to the Center was on February 4, 2009 when she complained of back pain for one week that was noted to be tender; in addition to her hypertension medications,

---

[1]The Court notes that Plaintiff lists only three claims under the "Claims on Appeals" heading in her brief; however, claims three and four were argued in the substance of the arguments.

[2]*Keflex* is used for the treatment of various infections. *Physician's Desk Reference* 854-56 (52nd ed. 1998).

[3]*Diovan* is used to treat hypertension. *Physician's Desk Reference* 1841-43 (52nd ed. 1998).

Pritchett was prescribed Naproxen[4] (Tr. 190-91).  A year later,
on March 15, 2010, Plaintiff complained of frequent urination
and the knot under her left arm (Tr. 190).[5]

On April 27, 2010, Dr. Huey Kidd, D.O., performed a
consultative examination in which he found that Pritchett had a
full range of motion (hereinafter *ROM*) in her extremities (Tr.
219-20).  Plaintiff had 5/5 strength in the upper extremities
except for abduction of the shoulders, being only able to abduct
to about 110° bilaterally; grip strength in both hands was 5/5.
Pritchett had good dexterity; fine dexterity appeared normal.
Plaintiff was able to heel walk, toe walk, bend and touch her
toes, and squat and stand without difficulty, though she was a
little clumsy; she walked without a limp.  Dr. Kidd's impression
was that Pritchett had carpal tunnel syndrome.

On May 3, 2010, Dr. E. Russell March, Jr., completed a
residual functional capacity assessment, based on the medical
evidence available at that time, in which he indicated that
Pritchett was capable of lifting and carrying up to fifty pounds
occasionally and up to twenty-five pounds frequently (Tr. 221-
28).  Pritchett would be able to sit, stand and/or walk up to

---

[4]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug
with analgesic and antipyretic properties" used, *inter alia*, for the
relief of mild to moderate pain.  *Physician's Desk Reference* 2458 (52nd
ed. 1998).

[5]Consistent with most of the notes from Yellow Bluff Health
Center and Dr. Edward Childs (a doctor at the Center), these medical
records are indecipherable.

six hours each during an eight-hour day.  She would have no trouble with hand and/or foot controls.  She would be limited in reaching and handling.

On June 7, 2010, Dr. Edward Childs noted that Plaintiff had a sixteen-year history of intermittent low back pain; he noted tenderness in the lumbar muscles for which Flexeril[6] was prescribed (Tr. 234-35; *see generally* Tr. 231-37).  On June 28, 2010, Pritchett was seen for a follow-up examination and reported no symptoms or side effects from her medications; her blood pressure was under control (Tr. 233).  On July 27, Plaintiff complained of increased blood pressure and dizziness for the previous five days; on examination, blood pressure was 120/84 (Tr. 232).  Pritchett also complained of cervical back pain, radiating into her legs; the doctor noted tenderness.  On August 24, Plaintiff complained of numbness in her hands and decreased grip strength (Tr. 231).

Records from the Yellow Bluff Health Center show that, on July 22, Pritchett had complaints of headaches and feeling light-headed (Tr. 246; *see generally* Tr. 239-56).  On October 19, Plaintiff had upper respiratory congestion (Tr. 245).  On November 30, Pritchett had a productive cough, but no dizziness,

---

[6]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

fever, or chills (Tr. 244). On January 3, 2011, Plaintiff had a headache and was feeling light-headed (Tr. 243). On February 28, Pritchett had a headache, a trigger thumb on her right hand, and lower back pain with decreased ROM in both shoulders; the doctor noted L4 – S1 tenderness and mildly diminished abduction in the shoulders (Tr. 259). On April 28, 2011, Pritchett was found to have uncontrolled hypertension and migraine headaches (Tr. 265). On May 31, the doctor noted that Plaintiff's increased hypertension tended to be associated with her headaches; back pain was intermittent (Tr. 265). On June 28, Pritchett complained of headaches, radiating into her neck, and lower back pain (Tr. 264). X-rays of the lumbar spine two days later revealed minimal scoliosis or malposition, resulting in a diagnosis of mild spondylosis (Tr. 267).

On July 5, Dr. Childs completed a clinical assessment of pain in which he indicated that Pritchett suffered pain at a level that would distract her from performing daily activities and that physical activity would increase her pain, but not to the point of preventing adequate functioning (Tr. 269-70). The doctor indicated that pain medication would cause significant side effects that would limit her work duty effectiveness; Childs expected little improvement in her pain over time and expressed the opinion that her pain would get worse. The doctor also completed a statement indicating his opinion that Pritchett

6

was capable of sitting for four hours, standing for three hours, and walking for one hour at a time and during an eight-hour day (Tr. 272-74). Plaintiff would be capable of lifting and carrying up to ten pounds frequently and twenty pounds occasionally. Dr. Childs found Plaintiff capable of simple grasping, pushing and pulling of arms controls, and fine manipulation frequently with the left hand, but only occasionally with the right hand; she could use leg controls frequently. Pritchett could stoop, crouch, kneel, crawl, balance, and reach occasionally, but never climb; he thought she would miss one day of work per month because of her impairments.

On August 30, 2011, records from Yellow Bluff Health Center show that Plaintiff complained of head pain, radiating into her neck (Tr. 290). In a note from October 18, Plaintiff stated that the medications that she was taking for her back helped for only a short period of time before the pain returned (Tr. 294).

The ALJ rendered a determination that Plaintiff was capable of returning to her past previous work (Tr. 26-31). In reaching this decision, the ALJ found that Pritchett's complaints of pain were not credible to the extent alleged (Tr. 30). The ALJ gave significant weight to Dr. March's assessment (Tr. 30). This concludes the medical evidence of record.

In bringing this action, Pritchett first claims that the ALJ did not properly consider all of her impairments. More

specifically, she asserts that the ALJ did not consider her

mental impairment or depression (Doc. 14, pp. 2-4).  As support

for her claim, Plaintiff points to two different instances in

the record where she had contact with the Social Security

Administration (hereinafter *SSA*) in seeking benefits in which

she mentions these impairments.  In the first, an SSA employee

reported the following contact:

> I contacted the CL regarding her ADLs
> as she mentions:  "Some days I try to do
> some cooking, laundry start feeling light
> headed, dizziness and depressed go sit
> down."  I asked the CL if her "depressed"
> state prevented her from working and she
> denied it and stated that "my blood pressure
> and my hands hurt a lot.  It's my hands that
> give me a lot of problems."

(Tr. 149).  In another questionnaire for SSA, Plaintiff answered

a question about her daily activities by stating that

"Everything has changed my whole life.  I'm used to doing for

myself going places.  Now all of that have change.  I can't

work.  So I have a physical and mental problem and very

depressed everyday can't sleep at nite.  For pain and

depression" (Tr. 157).

The Court notes that there is no record of Plaintiff ever

receiving any mental health treatment; Pritchett has not

directed this Court to any evidence that she even suggested

these impairments to any of her treating physicians (*see* Doc.

8

14). She made no complaints of a mental impairment or depression at her hearing before the ALJ (Tr. 37-47).

Plaintiff's statements of symptoms alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508 (2013) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"). The Court further notes that an "ALJ is under no obligation to seek independent, additional expert medical testimony before concluding that an impairment is not severe." *Sneed v. Barnhart*, 214 Fed.Appx. 883, 886 (11th Cir. 2006) (*citing Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)). Furthermore, the ALJ is not required to go through the process of examining a mental impairment, discussed in 20 C.F.R. § 404.1520a, when the record provides nothing more than Plaintiff's assertions of impairment. *See Rudolph v. Apfel*, 2000 WL 207878, at *3 (S.D. Ala. February 16, 2000). Pritchett's claim otherwise is without merit.

Plaintiff next claims that the ALJ did not consider the combination of her impairments. She asserts that the ALJ did not consider her dizziness, lightheadedness, and vertigo (Doc. 14, pp. 4-6).

It is true that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be

9

of such severity."  42 U.S.C. § 423(d)(2)(C).  The Eleventh

Circuit Court of Appeals has noted this instruction and further

found that "[i]t is the duty of the administrative law judge to

make specific and well-articulated findings as to the effect of

the combination of impairments and to decide whether the

combined impairments cause the claimant to be disabled."  *Bowen*

*v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves*

*v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*,

679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Plaintiff's impairments and

concludes by saying that she "does not have an impairment or

combination of impairments that meets or medically equals one of

the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1" (Tr. 29).  This specific language has been upheld by

the Eleventh Circuit Court of Appeals as sufficient

consideration of the effects of the combinations of a claimant's

impairments.  *Jones v. Department of Health and Human Services*,

941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have

"an impairment or combination of impairments listed in, or

medically equal to one listed in Appendix 1, Subpart P,

Regulations No. 4").  Plaintiff's claim is without merit.

Pritchett next asserts that the ALJ's determination of her

RFC is incorrect (Doc. 14, p. 3).  This claim seems to be based

on the ALJ's failure to discuss her mental impairments or the

combination of her impairments, already discussed herein.

The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546. The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3). As the Court has already found that Plaintiff's prior two claims lack merit, and they form the basis for this claim, the Court finds that this claim, too, lacks merit.

Pritchett next claims that the ALJ did not pose a complete hypothetical question to the VE. Plaintiff again references her dizziness, lightheadedness, and vertigo as being missing in the query to the VE (Doc. 14, p. 5). The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court notes that the ALJ did not find any of these impairments to be severe (Tr. 28). In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected

11

to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a).[7]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

Plaintiff has not demonstrated that the incidence of the symptoms to which she points—dizziness, lightheadedness, and vertigo—would prevent her from working.  Without this showing, these impairments cannot be said to be severe and the ALJ's failure to include them in hypothetical questions to the VE would not be error.

Finally, Pritchett claims that the Appeals Council did not properly consider newly-submitted evidence.  Plaintiff

---

[7]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

references the evidence appearing at pages 260-95 (Doc. 14, pp. 6-8).

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision. To make that determination, the Court considers whether the claimant "establish[ed] that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

The Appeals Council found that the new evidence did not

provide a basis for changing the ALJ's decision as it was all generated after the ALJ's decision had been rendered and did not purport to relate back to the period of time under consideration (Tr. 2). Except for the evidence appearing at Tr. 261-67, this is true. Even so, the Court has reviewed all of the evidence and summarized it herein and finds that it would not have changed the ALJ's decision. Even the strongest of the evidence, the pain form and the form detailing Plaintiff's physical abilities completed by Dr. Childs (Tr. 269-70, 272-74), is unsupported by objective medical evidence in the doctor's own records or by any other physician of record. Pritchett's claim that the Appeals Council did not properly consider the newly-submitted evidence is without merit.

Plaintiff has raised five different claims in this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 29th day of July, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

14